**SANDT TECHNOLOGY, LTD.,**
Plaintiff–Appellant,

v.

**RESCO METAL AND PLASTICS CORPORATION (also known as Resco Metal Products Corp.) and Seven Ocean Enterprises, Inc., Defendants–Appellees.**

**No. 00–1449.**

United States Court of Appeals,
Federal Circuit.

Sept. 6, 2001.

Rehearing and Rehearing En Banc
Denied Oct. 15, 2001.

Michael D. Harris, Oppenheimer Wolff & Donnelly LLP, of Los Angeles, CA, argued for plaintiff-appellant. With him on the brief was Charles B. Rosenberg.

Jay A. Bondell, Schweitzer Cornman Gross & Bondell LLP, of New York, NY, argued for defendants-appellees.

Before MICHEL, SCHALL, and DYK, Circuit Judges.

MICHEL, Circuit Judge.

This is an action for patent infringement and declaratory judgment for patent invalidity. Sandt Technology, Ltd. ("Sandt"), the patentee, appeals the May 26, 2000 judgment of the United States District Court for the Southern District of New York which adopted the January 7, 2000 Report and Recommendation of a Magistrate Judge and granted Resco Metal and Plastics Corporation and Seven Oceans Enterprises, Inc.'s ("Resco") motion for summary judgment that all claims, assert-

ed and unasserted, of Sandt's U.S. Patent No. 5,509,057 ("the '057 patent") are invalid. Sandt also appeals the district court's denial of its motion for summary judgment that Resco's security device for coin-operated pay telephones, the "Protector," infringed the '057 patent. We heard oral argument on May 7, 2001, and have jurisdiction to hear this appeal under 28 U.S.C. § 1295(a)(1) (1994).

Because there was sufficient corroboration of the testimony of Resco President Frederick Zausner that he previously invented a security cover that qualified as prior art under 35 U.S.C. § 102(g)(2) (West.Supp.2000), and that it anticipated claim 1 of the '057 patent, we affirm the district court's judgment that claim 1 is invalid. We also affirm the district court's holding that the inventions of claims 3 and 19 would have been obvious in light of the prior art. However, because the district court did not independently consider the validity of the remaining 18 dependent claims (claims 2, 4–18, 20–21) in granting Resco's motion for a declaratory summary judgment of invalidity, we reverse the holding of the district court insofar as it held those claims invalid, and remand for the district court to conduct an obviousness determination with respect to the remaining claims.

## Background

Sandt and Resco both manufacture and distribute security devices for pay telephones. A standard pay telephone has two "housings" to handle coins. The "upper housing" contains the telephone's electromechanical components and the slot into which the user deposits coins. The "lower housing" contains a vault or storage box, and the coin return. An unprotected telephone is prone to theft or tampering. In the typical method of theft, the thief drills a hole through the upper housing, and inserts a wire in order to interfere with the coin return mechanism. This method is often successful, because both the lower and upper housings are typically comprised of weak, easy-to-penetrate steel that allows the thief to "peelback" or cut through the sides of the housing to gain access to the phone's coin bank. Thieves can also gain access to the coin bank through the "information pad." The information pad is held in place by a shiny face plate that is typically made of zinc, a soft metal that allows the thief to pry off the plate with a screwdriver or other device and affect internal switches.

In order to combat the problem of theft and tampering, the employees of both Sandt and Resco invented devices which replaced the single, weak face plate with a two-plated stainless steel cover for the upper housing. Sandt invented the "Bodyguard," the commercial embodiment of the device claimed in its '057 patent, which issued on April 16, 1996. As shown in the drawing, the stainless steel outer plate 32 has two rectangular openings for the information pad and the dial buttons. '057 patent, col. 5, ll. 5–11. In order to protect the areas left vulnerable by the openings in the outer plate, the device has an inner or second stainless steel plate 42 mounted between the outer plate 32 and the upper housing 12. *Id.* at col. 5, ll. 16–19. This second plate prevents access to the upper housing if a thief tries to gain access through the information pad opening. For ease of mounting, plate 32 has studs 43 extending through the plate 42 and into openings in the upper housing 12. *Id.* at col. 5, ll. 19–25.

Resco also developed a double-plated stainless steel cover for the upper housing which uses studs to mount the cover to the housing. Its device, the "Protector," was introduced to the market in May 1997.

Sandt filed a patent infringement action against Resco on August 14, 1997. On June 12, 1998, Sandt moved for summary judgment that Resco's Protector infringed claims 1, 3, and 19 of the '057 patent, and for a declaratory judgment that all of the other claims of the '057 patent were not invalid. On June 30, 1998, Resco filed a cross-motion for summary judgment seeking a declaratory judgment that all claims of the '057 patent were invalid. To support Resco's invalidity argument, Zausner stated in an affidavit that in 1990, which was before the filing date of the '057 patent, he had built (and reduced to practice) a two-plated stainless steel upper housing cover that anticipated the invention of the '057 patent. An undated photograph, allegedly taken at the time of invention, accompanied Zausner's declaration. Although it failed to obtain a patent on this device, Resco asserted that it submitted sufficient evidence, including its 1991 rejected patent application for a stainless steel housing, to corroborate Zausner's testimony of the 1990 manufacture of the stainless steel cover for the upper housing.

On January 7, 2000, a U.S. Magistrate Judge issued his Report and Recommendation that the district court hold claims 1, 3, and 19 of the '057 patent invalid. The Magistrate Judge did not recommend ruling on infringement, because he determined that the invalidity ruling mooted the question of infringement of the '057 patent. On May 25, 2000, the district court adopted the Magistrate Judge's Report, but instead of holding only claims 1, 3, and 19 invalid, it declared the '057 patent to be invalid. The court issued its judgment on May 26, 2000.

Sandt filed with the district court a timely notice of appeal to this court. Sandt argues that the district court erred in holding claims 1, 3, and 19 of the '057 patent invalid, because the Resco cover had not been established as prior art, and further that the district court had misconstrued the claim language. Sandt also argues that the district court erred in holding all of the other claims of the '057 patent invalid, because Resco had presented no argument or evidence establishing the invalidity of those claims. The other claims (claims 2, 4–18, 20–21) are all dependent claims and thus have one or more additional limitations than independent claims 1 and 19 on which they depend.

## Discussion

### A. Standard of Review

■ We review a district court's grant of summary judgment *de novo*. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477

U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**B. Anticipation of Claim 1 Under § 102(g)(2)**

■ Section 102(g)(2) provides that a person is entitled to a patent unless "before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it." 35 U.S.C. § 102(g)(2). A prior art device can anticipate a claimed invention under § 102(g)(2) if it was conceived and reduced to practice prior to the filing date of the patent. *New Idea Farm Equip. Corp. v. Sperry Corp.,* 916 F.2d 1561, 1565, 16 USPQ2d 1424, 1428 (Fed.Cir.1990). Anticipation under § 102 requires " 'the presence in a single prior art disclosure of all elements of a claimed invention arranged as in that claim.' " *Carella v. Starlight Archery & Pro Line Co.,* 804 F.2d 135, 138, 231 USPQ644, 646 (Fed.Cir.1998)(quoting *Panduit Corp. v. Dennison Mfg. Co.,* 774 F.2d 1082, 1101, 227 U.S.P.Q. (BNA) 337, 350 (Fed.Cir.1985)) (additional citations omitted).

Sandt argues that the district court erred in holding that claim 1 of the '057 patent was anticipated by the telephone security cover allegedly made by Resco in the early 1990s. Sandt argues the Resco cover is not prior art under § 102(g)(2) because its existence has not been proven apart from the inventor's own testimony. Even if the Resco device is prior art, Sandt argues, Resco had abandoned the cover, and in any event, the Resco cover lacks the claimed elements.

**1. Was there sufficient corroboration of the inventor's testimony?**

■ The presumption of validity, 35 U.S.C. § 282 (1994), requires those challenging validity to introduce clear and con-

vincing evidence on all issues relating to the status of a particular reference as prior art. *See Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1576, 38 USPQ2d 1288, 1290 (Fed.Cir.1996). It is well-established in our case law that a party claiming his own prior inventorship must proffer evidence corroborating his testimony. *Price v. Symsek,* 988 F.2d 1187, 1194, 26 USPQ2d 1031, 1036 (Fed.Cir.1993). "This rule addresses the concern that a party claiming inventorship might be tempted to describe his actions in an unjustifiably self-serving manner in order to obtain a patent or to maintain an existing patent." *Singh v. Brake,* 222 F.3d 1362, 1367, 55 USPQ2d 1673, 1676 (Fed.Cir.2000); *see also Kridl v. McCormick,* 105 F.3d 1446, 1450, 41 USPQ2d 1686, 1689 (Fed.Cir.1997) ("The tribunal must also bear in mind the purpose of corroboration, which is to prevent fraud, by providing independent confirmation of the inventor's testimony."). "[A] 'rule of reason' analysis is applied to determine whether an inventor's testimony ... has been corroborated." *Price,* 988 F.2d at 1195, 26 USPQ2d at 1037. In applying the "rule of reason" test, "all pertinent evidence" is examined in order to determine whether the "inventor's story" is credible. *Id.* "[E]ach corroboration case must be decided on its own facts with a view to deciding whether the evidence as a whole is persuasive." *Cooper v. Goldfarb,* 154 F.3d 1321, 1331, 47 USPQ2d 1896, 1904 (Fed.Cir.1998) (citing *Berges v. Gottstein,* 618 F.2d 771, 776, 205 USPQ 691, 695 (CCPA 1980)).

■ Although each case must be decided in view of its own facts, the determination is not utterly unstructured. Rather, our court has provided considerable guidance on the standards by which to judge whether or not an inventor's testimony has been sufficiently corroborated. Documentary or physical evidence that is

made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated. *See Woodland Trust v. Flowertree Nursery, Inc.,* 148 F.3d 1368, 1373, 47 USPQ2d 1363, 1367 (Fed.Cir. 1998). Because documentary or physical evidence is created at the time of conception or reduction to practice, the risk of litigation-inspired fabrication or exaggeration is eliminated. Circumstantial evidence about the inventive process, alone, may also corroborate. *See Knorr v. Pearson,* 671 F.2d 1368, 1373, 213 USPQ 196, 200 (CCPA 1982) ("[S]ufficient circumstantial evidence of an independent nature can satisfy the corroboration rule."). Additionally, oral testimony of someone other than the alleged inventor may corroborate an inventor's testimony. *Woodland Trust,* 148 F.3d at 1371, 47 USPQ2d at 1366. In contrast to contemporaneous documentary evidence, however, post-invention oral testimony is more suspect, as there is more of a risk that the witness may have a litigation-inspired motive to corroborate the inventor's testimony, and that the testimony may be inaccurate. *Id.* at 1373, 148 F.3d 1368, 47 USPQ2d at 1367 (noting that testimony from witnesses is often "unsatisfactory" in view of "the forgetfulness of witnesses, their liability to make mistakes, [and] their proneness to recollect things as the party calling them would have them recollect them") (citing *Barbed Wire Patent Case,* 143 U.S. 275, 284, 12 S.Ct. 443, 36 L.Ed. 154 (1892)). This court has articulated the following illustrative factors that may be useful in guiding the determination of whether a witness' testimony provides sufficient corroboration: 1) the relationship between the corroborating witness and the alleged prior user; 2) the time period between the event and trial; 3) the interest of the corroborating witness in the subject matter in suit; 4) contradiction or impeachment of the witness' testimony; 5) the extent and details of the corroborating testimony; 6) the witness' familiarity with the subject matter of the patented invention and the prior use; 7) probability that a prior use could occur considering the state of the art at the time; and 8) impact of the invention on the industry, and the commercial value of its practice. *Id.* at 1371, 148 F.3d 1368, 47 USPQ2d at 1366 (citing *In re Reuter,* 670 F.2d 1015, 1021 n. 9, 210 USPQ 249, 255 n. 9 (CCPA 1981)).

■ In this case, the district court noted that the prior art status of the Resco cover had been corroborated by four pieces of evidence: 1) a January 23, 1991 patent application for the stainless steel housing, which was ultimately abandoned after a final rejection for indefiniteness; 2) a January 18, 1991 letter from Resco in response to the telephone company NYNEX's request for proposals to solve the telephone theft problem; 3) an affidavit from Paul Horbach, a former employee of NYNEX, stating that Zausner demonstrated the Resco cover to him at Resco's shop in 1990 or 1991; and 4) 1992 invoices for purchases of security upper housings.

We hold that the district court correctly concluded that the manufacture of the Resco cover was sufficiently corroborated. The evidence offered by Resco to corroborate Zausner's testimony is quite different from the evidence found insufficient in the cases relied upon by Sandt. Unlike the evidence found insufficient in *Woodland Trust,* most of Resco's corroborating evidence consists of physical records that were made contemporaneously with Resco's invention. For instance, Resco offers as corroborating proof its January 23, 1991 patent application for the stainless steel housing. This time period is contemporaneous with the time in which Zausner testified that he had invented the cover. Moreover, unlike the evidence found insuf-

ficient in *Finnigan Corp. v. International Trade Commission*, 180 F.3d 1354, 51 USPQ2d 1001 (Fed.Cir.1999), the patent application provides support for Zausner's testimony. *Finnigan*, 180 F.3d at 1369, 51 USPQ2d at 1012 (noting that inventor's ambiguous article cannot corroborate his testimony of prior invention). Figure 2 of the 1991 rejected patent application shows a double-plated stainless steel housing cover consistent with the type of cover Zausner testified that he had invented. The application states that the device contains a "front panel," with "recessed areas 44, 46, and 48," that "comprise an aperture 50 *backed with a plate 52* of a material compatible with the main housing material ... *underlying the aperture* and rigidly affixed ... by welds 54, about the periphery of the opening to form a unitary and solid structure." A reasonable jury could only conclude that the drawing shows the second stainless steel plate.

Resco submitted other contemporaneous documents to corroborate the inventor's testimony. In a January 18, 1991 letter to the Telesector Resources Group, the buyer for NYNEX, Resco (on its printed stationery) proposed three solutions to the phone theft and tampering problem with accompanying figures and drawings. The district court noted, and Resco concedes, that the offer-for-sale letter does not explicitly detail the structure of the cover nor does it refer unambiguously to the second plate. However, as the district court noted, the drawings accompanying the letter clearly reference the second plate. Indeed, figure C is the same drawing that accompanied the rejected patent application for the stainless steel housing. This drawing clearly shows a second plate 46 located behind an opening 44 in the front panel

and welded to the first plate to prevent access to the telephone interior through the opening.

In addition to the documentary evidence corroborating the inventor's testimony, Resco also submitted witness statements. In an affidavit, Horbach, a former employee of NYNEX, identified a photograph as depicting the device that he recognized as a telephone upper housing cover that was offered for sale by Resco to NYNEX in 1990 or 1991. Horbach stated that the content of his affidavit was not based solely on his having viewed the photograph.[1] The Horbach testimony is quite different from the testimony of the witnesses in *Woodland Trust*. There, the witnesses were related to, or associated with, the defendant and the asserted prior uses occurred twenty years before trial. *Woodland Trust*, 148 F.3d at 1373, 47 USPQ2d at 1367–68. There was also no physical record to support the oral testimony. *Id.* at 1373, 148 F.3d 1368, 47 USPQ2d at 1367. In this case, Horbach has no interest in the outcome of the suit, is knowledgeable about telephone security devices, and his testimony was unrebutted. Moreover, unlike in *Woodland Trust*, there is a great deal of physical evidence made contemporaneously with Resco's invention that corroborates Horbach's declaration. For instance, while the 1992 invoices do not, in themselves, show the existence of the second plate consistent with Zausner's testimony, they do support an inference that in 1992, Resco sold a quantity of stainless steel upper housings to NYNEX, consistent with Horbach's testimony.

Thus, we conclude that as a matter of law, the evidence provides sufficient cor-

---

1. Sandt argues that because Horbach referred only to the photograph of the cover, his testimony violates the "best evidence" rule. This is incorrect. This case does not involve an effort to introduce a "writing, recording, or photograph" into evidence; therefore, the "best evidence" rule is inapplicable. *See* Fed. R.Evid. 1002.

roboration of Zausner's testimony that he had invented a security cover prior to April 16, 1996, the filing date of the '057 patent.[2]

### 2. If the Resco cover previously existed, was it abandoned?

■ Sandt argues that even if the Resco cover pre-dates its application filing date, Resco abandoned it under § 102(g)(2). An inventor "may seek to avoid a determination of abandonment by showing that he or she marketed or sold a commercial embodiment of the invention or described the invention in a publicly disseminated document." *Checkpoint Sys., Inc. v. Int'l Trade Comm'n*, 54 F.3d 756, 762, 35 USPQ2d 1042, 1047 (Fed.Cir. 1995). To support its argument, Sandt contends that since Resco filed a patent application for the housing—and not the cover—Resco had abandoned the cover in favor of the housing. Sandt also notes that when Resco introduced the Protector in May 1997, it had abandoned the earlier welded approach as used in the alleged cover, and instead, used the '057 patent's claimed stud-attaching method. Somehow, Sandt seems to suggest the alteration of fastening methods constitutes an abandonment.

■ The district court properly held that Resco had not abandoned its invention. The Telesector letter and drawings (including the drawing from the 1991 abandoned patent application), and the Hor-

bach affidavit, taken together, provide ample corroborating evidence that Resco had marketed the cover prior to the April 16, 1996 filing date of the '057 patent.[3]

### 3. If the Resco cover is prior art under § 102(g)(2), does it lack the limitations of claim 1 of the '057 patent?

■ Even if the Resco cover is prior art, Sandt argues that it does not anticipate the claimed invention because it lacks at least one claim limitation. The parties dispute the meaning of two limitations of claim 1: "a first plate *secured across* the housing flat front face"; and 2) "a portion [of the second plate] extending *directly behind* said opening to protect additionally said instrumentalities by preventing drilling of a small hole through the information pad." '057 patent, claim 1 (emphasis added). Sandt's assertion is based on its view of the correct claim construction. Claim construction is a matter of law reviewed de novo. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). In interpreting claims, a court "should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specifications and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996).

■ Sandt argues that the district court erred in construing the term "se-

2. On appeal, Sandt argued that Resco did not sufficiently corroborate Zausner's testimony. We have rejected that argument. Other than a conclusory statement that Resco's motion for summary judgment raised material fact issues, Sandt did not argue in its briefs that it was entitled to a jury trial on the issue of anticipation (for example, on the theory that Resco's affiants lacked credibility). We conclude that any such argument has been waived.

3. Sandt also argues that the Resco cover does not constitute prior art under 35 U.S.C. § 102(b) (1994). Because we affirm the district court's holding that the Resco cover is prior art under § 102(g), we need not address Sandt's § 102(b) argument. Moreover, we need not address Sandt's argument that Resco introduced no evidence of public knowledge or public use under 35 U.S.C. § 102(a) (1994).

cured across" to refer to the placement or positioning of the plate, rather than to the position of the fasteners used to secure the plate to the housing. According to Sandt, because the Resco cover is secured to the telephone housing by welds at the peripheries of the cover and the housing, it is not "secured across" the housing front face as required by the claim. A plate welded to the periphery, Sandt argues, *extends* across the housing face, but it is not *secured across* the housing face.

The district court correctly construed the term "secured across" in claim 1. There is nothing in the specification which indicates that the term "secured across" requires a specific securing structure between the first and the second plate. Indeed, the specification states that the upper housing is "removed along with a double-face plate which may be bolted or welded to it ...." '057 patent, col. 3, ll. 60–63. The patent's teaching that the cover could be mounted to the housing by bolting or welding supports a broad interpretation of the term "secured across." The Resco cover is fastened to the housing, and is therefore secured across the face of the housing within the meaning of claim 1. Thus, it contains this limitation of claim 1.

 Sandt also argues that the district court erred in construing the term "directly behind" in claim 1 so as not to require that the second plate actually touch the first plate. The Resco cover, Sandt argues, is "spaced" from the opening in the first plate, thus permitting access to the housing.

The district court noted the amount of space between the first and second plate in terms of depth or distance between the plates is "marginally larger" in the Resco cover than in the Bodyguard. However, nothing in the claims or the specification of the '057 patent requires that the second

plate be in a contacting or an abutting relationship with the rear end of the front plate. The specification states only that the second plate is "mounted *between* the outer plate ... and the upper housing." '057 patent, col. 5, ll. 18–19 (emphasis added). The Resco plate clearly has a second plate that is mounted behind the first plate, in a position that is directly behind the opening in the first plate. Thus, it contains this limitation of claim 1.

## C. Obviousness of Claims 3 and 19

 "Obviousness is a question of law based upon underlying factual determinations." *Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*, 21 F.3d 1068, 1071, 30 USPQ2d 1377, 1378 (Fed.Cir.1994) (internal citations omitted). Relevant underlying facts include: 1) the scope and content of the prior art; 2) the differences between the prior art devices and the claimed invention; 3) the level of ordinary skill in the art; and 4) objective considerations, such as commercial success, long felt need, failure of others, and copying. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Here, the question was resolved on summary judgment, however, so our review is entirely *de novo* as there are no underlying findings of fact.

 Sandt argues that the district court erred in holding that claims 3 and 19 would have been obvious in light of the prior art. Claim 3 requires a housing "formed with a set of apertures and the interior of the first plate fixedly mounts a set of *complementary studs* ... and the second plate is provided with complementary apertures by which it is mounted on said first plate." '057 patent, claim 3 (emphasis added). Sandt argues that because the Resco cover uses welds (as opposed to the '057 patent which employs nuts on top

of threaded studs on the first plate that attach to the complementary apertures in the second plate as one possible method of attachment), the district court erred in holding that the invention of claim 3 would have been obvious.

We hold that the district court correctly concluded that the use of threaded studs would have been an obvious substitution for welding. The court found that the only relevant difference between claim 3 and the Resco cover was the method of attachment: welds versus studs. As the district court noted, welding was inconvenient, because it must be done in the shop. Using studs was a cheaper, faster, and more convenient method of attachment, because it could be done on site. Moreover, the district court found that the differences between welds and studs was "not remarkable," and was merely a "slight variation that produce[d] convenience" that had no effect on the "novelty and concept of the invention: an opening for the information card behind which a second plate protects a vulnerable area of the telephone." Resco also offered evidence that the use of such studs in the context of telephone housings was common. Indeed, conventional face plates are mounted to telephone housings by studs, and Resco's cover in fact used threaded studs to mount the push button dial assembly. We thus hold that on this record, a reasonable jury could not conclude that the use of studs was nonobvious.

■■■] Claim 19 requires a "structure for mounting the second plate on the first plate." '057 patent, claim 19. The district court determined that the Resco cover did not anticipate claim 19, because the Resco cover's use of welds rendered the use of a "structure" for mounting the second plate unnecessary. Despite this difference, however, the district court concluded that this limitation of claim 19 was obvious,

because the difference concerned a method of attachment or affixation that produced a slight convenience without any change in the respective limitations of the claims. We see no error in the district court'sconclusion.

Sandt also argues that the district court erred in failing to weigh secondary considerations, such as the commercial success of the Bodyguard, in its obviousness analysis. The district court, however, did review Sandt's evidence of commercial success, and properly found that it did not alter its conclusion that claims 3 and 19 of the '057 patent were invalid as obvious. *See Newell Cos., Inc. v. Kenney Mfg. Co.,* 864 F.2d 757, 768–69, 9 USPQ2d 1417, 1426–27 (Fed.Cir.1988). The court reasoned that Sandt patented a method of protecting pay phones from vandalism, and that there was no evidence that the better means of attachment improved the protective capacity of the phones, thereby spurring sales. In other words, nexus was not proven between this patented feature and the substantial sales. Although acknowledging that a Resco agent had been shown the Sandt cover at a trade show, the district court said that there was no genuine issue of material fact as to copying, which would preclude summary judgment, because it was unlikely that Resco agents had been given permission to dismantle the cover and thus copy the use of the threaded studs. We see no error in the district court's conclusion in this case that the secondary considerations cannot overcome the strong evidence of obviousness presented.

### D. Invalidity of Unasserted Claims

■■■■] Despite the fact that the Magistrate Judge's Report only recommended holding claims 1, 3, and 19 invalid, the district court, when adopting the Report, held that all claims of the '057 patent were

invalid. This was error. In this action, which included claims and cross-claims for summary judgment respecting validity, Sandt moved for summary judgment that all of its claims were not invalid, and Resco moved for summary judgment that all claims were invalid. However, both parties presented evidence or argument regarding only the validity of independent claims 1 and 19, and dependent claim 3. Moreover, while Resco argued generally that the remaining 18 claims (claims 2, 4–18, 20–21) were invalid as obvious in light of the Resco stainless steel housing, the Resco stainless steel cover and U.S. Patent No. 5,134,654 ("the '654 patent"), issued to McGough, it did not present evidence or argument of how the prior art suggested the additional limitations present in those dependent claims. All claims are "presumed valid independently of the validity of the other claims." 35 U.S.C. § 282. Because dependent claims contain additional limitations, they cannot be presumed to be invalid as obvious just because the independent claims from which they depend have properly been so found. Thus, since Resco offered insufficient evidence to support its argument that claims 2, 4–18, and 20–21 are invalid as a matter of law, the district court erred in holding those claims invalid on summary judgment. Thus, we must reverse that portion of the district court's decision, and remand for a redetermination of obviousness after trial.[4]

### E. Infringement of the '057 Patent

Sandt only asserted that Resco infringed claims 1, 3, and 19 of the '057 patent. Because the district court determined that those claims were invalid, it held that it need not decide infringement. In *Cardinal Chemical Co. v. Morton International, Inc*, 508 U.S. 83, 96, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993), the Supreme Court held that the issue of validity is not mooted when a finding of noninfringement is made or affirmed. This case is the exact opposite. Here, the district court determined that the claims (claims 1, 3, and 19) asserted to be infringing were invalid; thus it was not necessary for it to determine whether Resco infringed those claims; even if it did infringe, the claims were not valid so no judgment of liability could be entered. *See B.F. Goodrich Co. v. Aircraft Braking Sys., Corp.*, 72 F.3d 1577, 1583, 37 USPQ2d 1314, 1319 (Fed. Cir.1996) ("Because we hold that [the] claims ... are invalid as ... obvious ... we need not reach the issues relating to ... infringement.").

### Conclusion

We affirm the district court's summary judgment holding that claim 1 was anticipated under § 102(g)(2), and that the inventions of claims 3 and 19 would have been obvious as a matter of law in light of the prior art. We also affirm the district

---

4. Declaratory judgment jurisdiction pursuant to 28 U.S.C. § 2201 (1994) must be predicated on the existence of a case or controversy between the parties. *See Altvater v. Freeman*, 319 U.S. 359, 363, 63 S.Ct. 1115, 87 L.Ed. 1450 (1943). As we stated in *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1398–99, 222 USPQ 943, 949 (Fed.Cir.1984), "[t]he case or controversy requirement for a patent invalidity declaratory judgment action requires the presence of two elements. First, the defendant in such an action must have engaged in conduct that created on the part of the declaratory plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question. [Citations omitted.] Next, the plaintiff seeking a declaration of invalidity must have actually produced the accused device or have actually prepared to produce such a device." On remand, the district court must determine whether a case or controversy exists with respect to the remaining claims, 2, 4–18, and 20–21, and if not, the declaratory judgment claims should be dismissed. If so, trial on obviousness should commence.

court's determination that its invalidity ruling made unnecessary an infringement analysis as to the three asserted claims. However, we reverse the district court's conclusion holding claims 2, 4–18, and 20–21 invalid, and remand to the district court for a determination of obviousness as to the other dependent claims after trial.

*AFFIRMED–IN–PART, REVERSED–IN–PART, and REMANDED.*

### Costs

Each party shall bear its own costs.

DYK, *Circuit Judge,* concurring.

While I agree with the majority that the issue was not properly raised in this case (ante at 1353 n. 2), I wish to add a word of caution concerning the determination of issues of alleged prior inventor credibility on summary judgment. It is one thing to find, after trial, that the alleged prior inventor's testimony is sufficiently corroborated to support a verdict of invalidity. *See, e.g., Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1578–79, 38 USPQ2d 1288, 1292 (Fed.Cir.1996) (district court proceeding with testimony of witnesses). It is quite another to hold that no trial is required in the first place. Even where our corroboration requirement is satisfied, in many cases summary judgment cannot be granted unless the prior inventor's testimony is considered to be credible. Even where there are no affidavits from the party opposing judgment (the patent holder), it will often be appropriate to deny summary judgment because the prior inventor's testimony raises issues of credibility that require a trial.

The Advisory Committee Note for Rule 56 of the Federal Rules of Civil Procedure explicitly recognizes that summary judgment is inappropriate in circumstances where credibility is an issue, stating: "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Advisory Committee Note to the 1963 Amendment, Fed. R.Civ.P. 56. This principle has been applied in cases such as *Cross v. United States,* 336 F.2d 431 (2d Cir.1964), holding that where issues of credibility exist, a reversal of a grant of summary judgment is required so that the non-moving party may test a witness's credibility on cross-examination. *Id.* at 433. In *Cross,* an assistant professor of romance languages sought a tax refund for expenses incurred in connection with his summer travel to various parts of Europe and the Mediterranean. *Id.* at 432. The professor contended that the purpose of the trip was to improve his language skills and extend his contacts with foreign cultures. *Id.* He supported his motion for summary judgment with a discovery deposition of himself (i.e., without cross-examination) and affidavits of several other professors. *Id.* at 431–32. The government filed no evidence in response, only claiming a right to cross-examine Cross and the affiant professors. *Id.* at 432. The district court granted summary judgment for Cross. On appeal, the Second Circuit held that while "ordinarily the bare allegations of the pleadings, unsupported by specific evidentiary data, will not alone defeat a motion for summary judgment, this principle does not justify summary relief where, as here, the disputed questions of fact turn exclusively on the credibility of movants' witnesses." *Id.* at 433 (internal citations omitted). The court therefore reversed the summary judgment grant and remanded for a trial. *Id.* at 434.

It is particularly questionable whether summary judgment should be granted in prior inventorship cases based on the affidavit of the alleged earlier inventor. As

we have repeatedly recognized, the affidavit of an alleged infringer seeking to establish prior inventorship is inherently suspect. *See Woodland Trust,* 148 F.3d at 1371, 47 USPQ2d at 1366 ("Throughout the history of the determination of patent rights, oral testimony by an alleged inventor asserting priority over a patentee's rights is regarded with skepticism . . . .") (quoting *Price v. Symsek,* 988 F.2d 1187, 1194, 26 USPQ2d 1031, 1036 (Fed.Cir. 1993)); *see also Singh v.. Brake,* 222 F.3d 1362, 1367, 55 USPQ2d 1673, 1676 (Fed. Cir.2000) ("[The corroboration] rule addresses the concern that a party claiming inventorship might be tempted to describe his actions in an unjustifiably self-serving manner in order to obtain a patent or to maintain an existing patent."); *Mahurkar,* 79 F.3d at 1577, 38 USPQ2d at 1291 (stating that the corroboration requirement "arose out of a concern that inventors testifying in patent infringement cases would be tempted to remember facts favorable to their case by the lure of protecting their patent or defeating another's patent").

However, I agree with the majority that these credibility issues, as opposed to the corroboration issues, have not been properly raised in this case.