# United States Court of Appeals for the Federal Circuit

---

**IN RE: THOMAS STEED, SOURAV BHATTACHARYA, SANDEEP SESHADRIJOIS,**
*Appellants*

---

2014-1458

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in No. 10/819,600.

---

Decided: October 1, 2015

---

SOURAV BHATTACHARYA, Fountain Hills, AZ, *pro se*.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Michelle K. Lee. Also represented by JAMIE LYNNE SIMPSON, AMY J. NELSON.

---

Before NEWMAN, CLEVENGER, and DYK, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Thomas Steed, Sourav Bhattacharya, and Sandeep Seshadrijois (collectively "Steed" or "Applicants") appeal the decision of the United States Patent and Trademark Office Patent Trial and Appeal Board ("Board") affirming the rejection of claims 37 and 39–51 of United States Patent Application No. 10/819,600 ("the '600 Application")

on the ground of obviousness, 35 U.S.C. § 103.[1]  Remaining claims 52–54 were subject to a restriction requirement at the time of the Board proceeding and were not considered by the Board.  Bd. Op. at 4–5.  We now affirm the Board's decision.

### *The Invention*

The '600 Application, entitled "Web-Integrated On-Line Financial Database System and Method for Debt Recovery," was filed on April 6, 2004, with priority claimed to a provisional application filed on November 13, 2003.  The invention is described in the specification as directed to "a debt records and debt collection system and database, and in particular to a web integrated debt records and debt collection system that can be accessed and operated across the Internet by a variety of users in a variety of user roles."  '600 Application, col.1, ll.16–19.  Claim 37 is stated to be representative:

> 37. A fully automated and web-integrated debt recovery system including a user interface, comprising different screen layouts for:
> an administrator web page; and
> a collector web page; and
> a cross-bar switch, where the cross-bar switch can turn on/off a
> connection between any pair of databases; and wherein:
> the system is configured to aid an administrator in a first plurality of roles;
> the system is configured to aid a collector in a second plurality of roles different from said first plurality of roles;

---

[1]    *Ex parte Steed*, No. 2012-005735 (P.T.A.B. Jan. 23, 2014) ("Bd. Op.").

> the administrator web page has first interface elements specific to the first plurality of roles;
>
> and the collector web page has second interface elements specific to the second plurality of roles,
>
> wherein certain data is assigned to only the first plurality of roles, the second plurality of roles and/or an intersection of the first plurality of roles and second plurality of roles.

The Examiner rejected all of the claims as obvious in view of U.S. Pre-Grant Publication No. 2004/0019560 ("Evans"), alone or in combination with other references ("the Evans Rejections"). The Evans publication is entitled "System and Method for Debt Presentment and Resolution" and was found by the Examiner to anticipate the '600 Application's web-integrated debt recovery system. After unsuccessfully attempting to distinguish the Evans Rejections on the merits, Steed undertook to remove Evans as a reference in accordance with 37 C.F.R. § 1.131, a procedure called "swearing back" or "swearing behind" "under Rule 131," whereby the Applicant establishes that it was in possession of the claimed subject matter before the effective date of the reference. The Evans effective date is December 23, 2002.

To this end, during examination Steed submitted a Rule 131 Declaration that included four exhibits, as well as statements from Steed that Exhibit A showed "conception of the invention prior to the date of the Evans et al. reference," and that Exhibits B, C, and D showed "diligence continuing to the constructive reduction to practice." Rule 131 Decl., Paper No. 12 at ¶¶ 4–5 (Sept. 1, 2009). The Examiner found the Declaration and the exhibits insufficient, stating that the evidence relied on to show conception was "a high level presentation that does not include any specifics of the actual invention, only a broad overview of the idea" and that it "fail[ed] to disclose any of the key elements of independent claim 37." Office

Action, Paper No. 17 at 3 (Dec. 12, 2009). The Examiner found Exhibits B, C, and D to be insufficient for demonstrating diligence, for "there are significant gaps of time between each of the appendices A–D that amount to entire years of diligence being omitted" with "a total of about 63 months' worth of time unaccounted for to show due diligence with respect to the invention." *Id.* at 4.

The Applicants filed two new exhibits consisting of pages from the notebook of co-inventor Bhattacharya and the diary of co-inventor Steed. These exhibits consisted of over 150 pages of documents that Steed stated established "both the inventive act and reduction to practice prior to the publication date of Evans et al." and "due diligence of nearly 63 months." Pet. for Revival and Amendment, Paper No. 23 at 22, 28 (Sept. 14, 2010). The Examiner found these exhibits, considered together with the Declaration and earlier-filed exhibits, to be insufficient to show conception or reduction to practice, and that the additional documents "only succeed in accounting for a total of 6 months of time from the originally deficient 63 months." Examiner's Action, Paper No. 34 at 4–6 (March 3, 2011).

Steed appealed to the Board. The appeal brief included a Table entitled "Due Diligence/Continued Improvement Track Record." Bd. Appeal Br. 5. The Table is a chronological listing of entries in the "Inventor Activity Logs" and "Inventor Intranet Site Activity Logs," stated to show "diligence/continued improvement" supported by "Additional Evidence (by Affidavit & Testimony)." *Id.* The "Inventor Activity Logs" referred to various "notebook copies and computer dated files" included in Exhibit B-I and B-II of the Board Appeal Brief. *Id.* at 28. The "Inventor Intranet Site Activity Logs" refer to "proof of monthly payment to keep the intranet site up, which hosted the software," and the "Additional Evidence" refers to "evidence by testimony or affidavit, which can of course be enjoined as/when required" to prove diligence during every week over a period of seven years. *Id.* at 28–29.

During the Board hearing, the Board stated that it could not consider any evidence not already of record before the Examiner, referring specifically to the Table and other materials presented at the hearing. Following the hearing but before the Board's decision, Steed filed several motions, including: a "Motion to Set Oral Arguments Summary on Record," consisting of a summation of points and arguments presented at the hearing; a "Motion to Set Appeal Exhibits on Record (Post Oral Arguments)" which asked the Board to accept and include in the record the new material that Steed had brought to the oral argument (*viz.*, a PowerPoint presentation, inventor logbooks, and two additional affidavits); and a "Motion for Default (Post Oral Arguments)" stating that the Examiner had not submitted a responsive Answer to Steed's Briefs, and that Steed is therefore entitled to a default judgment.

Steed states, on appeal to this court, that the Board did not rule on these motions and this failure warrants judgment in favor of Steed, for Steed states that a favorable ruling on any of these motions would have resulted in sufficient evidence to demonstrate reduction to practice or conception and diligence, before the effective date of the Evans reference. In its decision, the Board stated that it could not consider any new argument or new evidence without a showing of good cause why the argument or evidence was not previously presented to the Examiner, citing 37 C.F.R. § 41.37(c)(1)(vii) (2011) ("Any arguments or authorities not included in the brief . . . will be refused consideration . . . unless good cause is shown") and § 41.47(e)(1) ("[A]ppellant may only rely on evidence that has been previously entered and considered by the primary examiner and present argument that has been relied upon in the brief."). Referring to the Table, the Board stated:

> [B]ecause neither the chart itself nor the contents of the chart are set forth in the Declaration, it is

> considered argument insufficient to establish specific facts to support due diligence.
>
> Furthermore, even if the Chart was set forth in the Declaration, the chart merely identifies that a piece of evidence corresponds to a certain date, but does not explain what fact that piece of evidence is meant to support as having occurred on that date.

Bd. Op. at 15. The Board ruled that Steed had not set forth specific facts to establish dates and acts of either conception or reduction to practice. The Board stated that the reduction to practice assertions at oral argument "are not set forth in the Appeal Brief or the Reply Brief, and are thus considered waived . . . . Appellants have not set forth sufficient facts to support an actual reduction to practice." Bd. Op. at 7–8.

The Board then reviewed and affirmed the Examiner's rejection on the ground of obviousness based on the Evans reference. This appeal followed.

## DISCUSSION

The principal issue on appeal is whether Steed antedated the Evans reference in accordance with the requirements and law implemented by Rule 131, for Steed bears the burden to establish "facts . . . in character and weight, as to establish reduction to practice prior to the effective date of the reference, or conception of the invention prior to the effective date of the reference coupled with due diligence from prior to said date to a subsequent reduction to practice or to the filing of the application." 37 C.F.R. § 1.131(b). Steed argues that the Declaration and exhibits meet the requirements of either actual reduction to practice or conception plus diligence.

### *Standard of Review*

When the issue of priority concerns the antedating of a reference, the applicant is required to demonstrate, with sufficient documentation, that the applicant was in possession of the later-claimed invention before the effective date of the reference. Demonstration of such priority requires documentary support, from which factual findings and inferences are drawn, in application of the rules and law of conception, reduction to practice, and diligence. The purpose is not to determine priority of invention—the province of the interference practice—but to ascertain whether the applicant was in possession of the claimed invention sufficiently to overcome the teachings and effect of an earlier publication of otherwise invalidating weight.

Thus, the facts and law of conception focus on whether the evidence presented by the applicant demonstrates that the inventor had a definite idea of the invention, as it would thereafter be applied in practice. The principles are legal, but the conclusions of law focus on the evidence, for which the Board's factual findings are reviewed for support by substantial evidence.

Similarly, actual reduction to practice under Rule 131 is a question of law, and depends on the evidence that the invention, as conceived, was shown to work for its intended purpose, before the date of the adverse reference. The Board applies the standards of precedent. *See, e.g.*, *Holmwood v. Sugavanam*, 948 F.2d 1236, 1238 (Fed. Cir. 1991) ("[A]n applicant must show that 'the embodiment relied upon as evidence of priority actually worked for its intended purpose.'") (citation omitted).

On appellate review, we review the Board's underlying findings for support by substantial evidence, and give plenary review to the Board's conclusions of law based on those findings. *See In re Jolley,* 308 F.3d 1317, 1320 (Fed. Cir. 2002) ("If the evidence in record will support several reasonable but contradictory conclusions, we will not find

the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative.").

Issues of diligence concern the period just preceding the effective date of the adverse reference, to the actual or constructive reduction to practice. Diligence turns on the factual record, and we review Board determinations as to diligence for support by substantial evidence in the record. While stating that it did not need to reach the issue of diligence because conception had not been demonstrated, the Board nonetheless found the evidence demonstrating diligence to be insufficient.

### *The Ruling of Waiver*

The Board held that "assertions that the claimed invention was actually reduced to practice in December of 1997, and at the latest by August of 2000 are not set forth in the Appeal Brief or the Reply Brief, and are thus considered waived." Bd. Op. at 6. We discern no such waiver. To the contrary, the appeal briefs included well over a hundred pages of exhibits and arguments, all directed to actual reduction to practice. Although the Board concluded that the evidence did not establish an actual reduction to practice, the issue was not omitted from the appeal briefs.

Steed's briefs before the Board are clear that Steed was attempting to establish conception, diligence, and actual reduction to practice. The flaw in Steed's proofs was in the content of the documentary evidence, not in any purported waiver. It is beyond debate that Steed was attempting to swear back of Evans, and that this was the focus of the evidence and argument presented to the Examiner and the additional documents and affidavits presented to the Board.

Steed stated in the Board Appeal Brief that "Applicants are also able to establish the invention date, to

1997." Bd. Appeal Br. 17. In the Board Reply Brief Steed stated: "Appellants invention . . . has been and continues to be real-world software that was executed on an internal hosting website beginning in 1997." Bd. Reply Br. 19. These assertions are grounded in the Rule 131 Declaration filed with the Examiner, where Steed averred that "we . . . constructively[2] reduced to practice before December 23, 2002." Rule 131 Decl., Paper No. 12 (Sept. 1, 2009).

Steed's references to activity earlier than the Evans effective date negate the Board's ruling that Steed waived the issue of actual reduction to practice. Steed pressed this issue before the Board during oral argument, arguing that the inventors conceived the invention and actually reduced it to practice "about five years before" the Evans date, in "the second half of '97." Bd. Hr'g Tr. at 9. Despite its charge of waiver, the Board appears to have considered the relevant information.

### Actual Reduction to Practice

The burden of showing actual reduction of practice is on the party seeking its benefit. *In re NTP, Inc.*, 654 F.3d 1279, 1291 (Fed. Cir. 2011). To demonstrate an actual reduction to practice, the applicant must have: (1) constructed an embodiment or performed a process that met all the limitations of the claim and (2) determined that the invention would work for its intended purpose. *In re Omeprazole Patent Litig.*, 536 F.3d 1361, 1373 (Fed. Cir. 2008).

---

[2]   At that time Steed was acting *pro se* and misstated the usage "constructively," but the intended meaning is clear. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed.'").

In examining the substance of Steed's assertions of reduction to practice, the Board found that Steed did not provide, with the Rule 131 Declaration, evidence adequate to demonstrate an actual reduction to practice before the Evans effective date. Steed argues that the Board ignored two statements in the appeal briefs, which Steed states set forth proof of an actual reduction to practice. Steed had stated in the appeal brief that the "Evans et al application file date is in December 2002, while Applicants had a working prototype much before December 2002." Bd. Appeal Br. 16. Steed had also stated in the Reply Brief, responding to the Examiner's Answer, that "Appellants invention . . . has been and continues to be real-world software that was executed on an internal hosting website beginning in 1997." Bd. Reply Br. 19.

The Board held that Steed did not provide facts showing any specific dates or events of actual reduction of practice but only presented statements of generalized activity. Steed responds that these statements were supported by two independent third-party witnesses, whose affidavits were offered and discussed during the Board hearing. Steed states that these witnesses corroborate the inventors' activities and support the asserted reduction to practice, and complains that the Board refused to receive the affidavits into evidence because they were not provided until the Board hearing. Steed states that these "two non-inventor witness affidavits . . . place the ARTP [actual reduction to practice] at a date no later than June 2000 and August 2000." Appeal Br. 8.

The Board declined to rely on these two affidavits or other materials presented for the first time at the Board hearing, telling Dr. Bhattacharya, who argued on behalf of the Applicants, that "we cannot rely on any information in [the materials presented for the first time at the Board hearing] in rendering our decision . . . . I'm sorry sir, you cannot submit evidence here. That's the problem." Bd. Hr'g Tr. 3, 7; *see* 37 C.F.R § 41.47(e)(1) ("[A]ppellant may

only rely on evidence that has been previously entered and considered by the primary examiner and present argument that has been relied upon in the brief or reply brief.")

Steed argues that these third-party affidavits were not new evidence because they were listed on the Table included in the Appeal Brief to the Board. Steed states that the two affidavits "were presented in [the Table]. Rightmost column for the row of the year 2000, in the Appeal brief, and also hand carried during the Oral Hearing." Appeal Br. 10. Steed states that the Table shows work "[d]uring every week of 2000." Bd. Appeal Br. 5. The Board stated that it did not consider the Table because it had not previously been provided to the Examiner. The Board also stated that the Table appears to be directed to diligence starting in 1997 and does not explicitly describe the claimed system. The Board found that the Table does not identify any specific activity on any specific date or provide any details to relate such activity to the claims on appeal. Bd. Op. at 15.

A note to the Table stated: "If Examiner or Appeal Board has any question re: the above data and how they can be traced to the Exhibits, please call the Inventors." Bd. Appeal Br. 29. Steed criticizes the Examiner and the Board for not having called the Inventors as requested. We do not discern a breach of agency duty, for although it might indeed have assisted this pro se applicant to be advised of the insufficiencies in the evidence, the Examiner had already responded that specific dates and activities were lacking from the materials provided. *See, e.g.*, Office Action, Paper No. 34 at 4–6 (March 3, 2011). The Board criticized the "hundred pages" of documents as being "replete with shorthand notations, incomplete records of phone conversations, and technical terminology spread out over many years . . . we find many of these documents almost completely incomprehensible without the Appel-

lants providing context." Bd. Op. at 8. On our review, this criticism is accurate.

No specific dates or acts tied to the several elements of the claims are referenced in the inventors' Declaration and the exhibits. The Declaration states that the invention was "reduced to practice before December 23, 2002" and that "from about November 26, 1997 through April 6, 2004 (the filing date of the . . . application) . . . we engaged in a diligent and reasonably continuous effort . . . to develop, market, manufacture, and seek patent protection for the invention." Rule 131 Declaration, Paper No. 12 (Sept. 1, 2009). The Board observed that although Steed provided many exhibits, they did not identify any specific pages or text as showing an actual reduction to practice. The Board stated that it was "incumbent upon Appellants to explain the content of the Exhibits, and any relevant relationships between different portions of the Exhibits." Bd. Op. at 9–10; *see In re Borkowski*, 505 F.2d 713, 719 (CCPA 1974) ("It was appellants' burden to explain the content of these notebook pages as proof of acts amounting to reduction to practice.").

We agree that the exhibits are not self-explanatory, and the Examiner had adequately warned the applicant, stating in the Final Office Action that "most of the notes included for the [year] 2000 are all notes to call people without actually including what phone calls were being made about and what was being accomplished with reference to the invention" and "there are 57 months of time unaccounted for in applicant's attempt to show due diligence," among other things. Office Action, Paper No. 34 at 5–6 (March 3, 2011). In an earlier Office Action, the Examiner stated that "Appendix A . . . does not include any specifics of the actual invention" and "there are significant gaps of time between each of the Appendices A-D that amount to entire years of diligence being omitted." Office Action, Paper No. 17 at 3–4 (Dec. 9, 2009).

On this appeal, Steed argues that there were "multiple, unambiguous and irrefutable statements" that showed actual reduction to practice in 1997 and no later than mid-2000, based on the Declaration and exhibits and the Table and the two third-party affidavits. Appeal Br. 8. Steed points to the "tabular summary, with a footnote inviting USPTO examiner to engage in detail discussion." Appeal Br. 15–16. Steed does not offer or identify specific dates or events in relation to the claims and the various steps thereof.

Steed argues that the two third-party affidavits were properly before the Board, stating that 37 C.F.R. § 41.47(e)(2) permits new evidence for good cause. This regulation does not so provide. Section 41.47(e)(1) states that appellants before the Board shall "only rely on evidence that has been previously entered and considered by the primary examiner and present argument that has been relied upon in the brief or reply brief." The exception stated in § 41.47(e)(2) only allows appellants to rely on a new argument when it is based upon a recent decision of either the Board or a court. *See* 37 C.F.R. § 41.33(d)(2) ("All other affidavits or other evidence filed after the date of filing an appeal . . . will not be admitted.").

We agree with the PTO argument, on this appeal, that

> [T]he Board cannot be faulted for not reviewing evidence that was not presented to it or to the Examiner. To the extent Appellants have better proof of an earlier actual reduction to practice or conception date, the proper remedy is to file a continuation application and present the evidence to the Examiner in the first instance.

PTO Br. 24. We conclude that substantial evidence supports the Board's findings, and the ruling that Steed did not establish an actual reduction to practice before the

Evans effective date of December 23, 2002. That ruling is sustained.

### *Conception and Diligence*

An inventor can antedate a Section 103 reference by showing that the invention was conceived before the effective date of the reference, with diligence to actual or constructive reduction to practice. 37 C.F.R. § 131(b).

Conception is "the formation, in the mind of the inventor, *of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice.*" *Mergenthaler v. Scudder*, 11 App. D.C. 264, 276 (D.C. Cir. 1897); *see Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985). The Board found that the evidence that Steed provided did not establish conception before the Evans effective date, and that Steed did not adequately explain the exhibits and how they showed conception of the claimed subject matter, or when such conception occurred. The Board recognized that the Table "identifies that a piece of evidence corresponds to a certain date" but criticized the absence of evidence to "explain what fact that piece of evidence is meant to support as having occurred on that date." Bd. Op. at 15.

The Board found that the exhibits did not provide information sufficient to establish that the inventors conceived the claimed invention before the Evans date, or to establish diligence to reduction to practice. *See* MPEP § 715.07(a) (Feb. 2003) ("Under 37 C.F.R. § 1.131(a), the critical period in which diligence must be shown begins just prior to the effective date of the reference or activity and ends with the date of a reduction to practice, either actual or constructive."). Although the claimed invention is a method conducted by computer software, this does not avoid the need for sufficient evidentiary specificity.

The Board's conclusion that conception or reduction to practice before the Evans date was not established is

based on findings that are supported by substantial evidence and must be sustained. Thus the Evans publication remains as a reference. The PTO held that this reference served to invalidate the Steed claims on the ground of obviousness.

### Obviousness

On this appeal Steed simply states that Evans "significantly non-overlaps with the current invention." The PTO points out that Steed advances no substantive arguments of non-obviousness. PTO Br. 8. This is correct. In the absence of a reasonable showing that the Examiner and the Board erred in deeming the Steed system obvious in view of the Evans Rejections, the rejection must be sustained.

### Due Process

Steed states that the Examiner and the Board violated due process by not contacting the Applicant as requested by the footnote to the Table, by not considering the third-party affidavits, and by failing to respond, in the Examiner's Answer, to all of the arguments presented by Steed. Appeal Br. 16–17. We do not discern a failure of due process, or unfairness, on the record of the PTO proceedings. The appropriate issues were raised, and Steed's submissions appear to have been fairly considered by the Examiner and the Board.

Steed also argues that the Board erred in failing to rule on Steed's three post-hearing motions. Steed states that these motions would have "set the correct evidences on record, as well as led to a Summary Judgment against the USPTO (due to USPTO Examiner failing to comply with MPEP rules." Appeal Br. 22–23. In the circumstances, and recognizing that the motions relate to the Board hearing and did not conform to Board regulations, we do not discern reversible error in the Board's omission of reference to or specific action on these motions.

CONCLUSION

Substantial evidence supports the Board's factual findings, and the Board correctly applied the law in ruling that Steed did not establish possession of the invention described and claimed in the '600 Application before the effective date of the Evans reference. Thus the claims were properly rejected on the ground of obviousness in view of the Evans Rejections. The Board's decision is affirmed.

**AFFIRMED**