# United States Court of Appeals for the Federal Circuit

_____

**GLOBAL HEALTH SOLUTIONS LLC,**
*Appellant*

**v.**

**MARC SELNER,**
*Appellee*

_____

2023-2009

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. DER2017-00031.

_____

Decided: August 26, 2025

_____

JONATHAN W.S. ENGLAND, Blank Rome LLP, Washington, DC, argued for appellant. Also represented by RUSSELL T. WONG, Houston, TX.

ANTHONY H. HANDAL, Norwalk, CT, argued for appellee.

_____

Before STOLL, STARK, *Circuit Judges*, and GOLDBERG, *District Judge*.[1]

STARK, *Circuit Judge*.

In 2011, Congress passed and the President signed the Leahy-Smith America Invents Act of 2011, Pub. L. No. 112-29, 125 Stat. 284, 284-341 (Sept. 16, 2011) ("AIA"). Among other innovations, "the AIA changed how priority is determined, by converting the U.S. patent system from a first-to-invent to a first-inventor-to-file system." *SNIPR Techs. Ltd. v. Rockefeller Univ.*, 72 F.4th 1372, 1374 (Fed. Cir. 2023). Prior to the AIA's enactment, a first inventor could obtain a patent even if a second inventor filed an application for the same invention first, as long as the first inventor could prove she was the first to invent. That was the essence of our prior "first-to-invent" system. Under the AIA, by contrast, a first inventor will generally not be entitled to a patent if a second inventor files his application first. This is a consequence of our transition to a "first-to-file" system.

The AIA does, however, preserve a limited opportunity for a first-inventor second-filer to obtain a patent despite another person filing his application first: where the first-filer *derived* the invention from the second-filer. That is, the first-inventor second-filer can try to prove that she conceived of the invention and communicated that invention to the first-filer before he filed his patent application. The AIA permits a first-inventor second-filer to pursue such a claim against a first-filer in a *derivation proceeding*.

This case marks our court's first review of an AIA derivation proceeding that was litigated in the Patent Trial

[1] Honorable Mitchell S. Goldberg, District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

and Appeal Board ("Board"). Global Health Solutions LLC ("GHS") and Marc Selner each filed a patent application covering the same subject matter. After discovering Selner's application, GHS filed a petition for an AIA derivation proceeding against Selner, contending that, although Selner filed his patent application first, he was not the true inventor. Rather, according to GHS, that distinction belongs to its founder, Bradley Burnam, who is listed as the inventor on GHS' patent application.

Before the Board, GHS alleged that Burnam conceived of the invention prior to Selner, and he communicated his invention to Selner; therefore, Selner derived his purported invention from Burnam. For this reason, GHS argued that its patent application should be granted despite Selner's earlier filing date. The Board disagreed, ruling in Selner's favor.

GHS now appeals. Before us, GHS contends that the Board committed multiple errors, each requiring reversal. GHS additionally argues that, at minimum, we should remand for the Board to consider GHS' alternative request that Burnam be named a co-inventor on Selner's patent application. As we see no merit in any of GHS' contentions, we affirm.

## BACKGROUND

### The Parties and Their Patent Applications

Selner filed U.S. Patent Application 15/549,111 ("'111 Application"), entitled "Ionic Nanovesicle Suspension and Biocide Prepared Therefrom," on August 4, 2017. The '111 Application names Selner as its sole inventor. Four days later, on August 8, 2017, GHS filed U.S. Patent Application 15/672,197 ("'197 Application"), "Petrolatum-Based Delivery Systems And [sic] For Active Ingredients." The '197 Application names Burnam as sole inventor. Both Applications claim priority from other patent applications that are also subject to AIA standards. It is undisputed

that the pertinent applications are governed exclusively by the AIA, that Selner is the first-filer, and that GHS is the second-filer.

Both the '111 and '197 Applications (together, "Applications") claim a method for preparing a wound treatment ointment, comprising nanodroplets of an aqueous biocide (Polyhexamethylene Biguanide ("PHMB")) permanently suspended in petrolatum jelly. Unlike prior art methods for making PHMB-petrolatum jellies, the methods disclosed in the two Applications do not require emulsifiers, which can irritate a patient's skin. Appx1081-82. The Applications' emulsifier-free ointments are achieved using a manufacturing method rendering the ointments' aqueous biocide nanodroplets polar and mutually-repelling, resulting in the nanodroplets becoming permanently suspended without the assistance of an emulsifier.

Although the parties disagree over details of the method for preparing the ointment, for our purposes it is sufficient to point to what they agree on: the modified polarity, which results in the emulsifier-free composition, arises from heating the petrolatum and PHMB separately, to different temperatures, before mixing them together. The Applications each claim the same or substantially the same method for preparing the ointment ("the Invention").

GHS' Petition and the Board's Institution Decision

On August 11, 2017, GHS filed a Petition to Institute Derivation Proceeding Pursuant to 35 U.S.C. § 135 ("Petition"). GHS' Petition alleged that Selner (who is referred to as the "respondent" before the Board) derived the claims of his '111 Application from Burnam. On April 6, 2022, the Board instituted a derivation proceeding.

In its institution decision, the Board found that GHS' Petition satisfied the regulatory requirements for an AIA derivation proceeding. The Board explained that the

Petition identifies at least one patent claim owned or applied-for by GHS that is (i) "[t]he same or substantially the same as . . . the respondent's claimed invention" and is also (ii) "[t]he same or substantially the same as . . . the invention disclosed to the respondent" by GHS' inventor, Burnam. Appx10-13; *see also* 37 C.F.R. § 42.405(a)(2)(i) & (ii) (defining these as necessary grounds for standing in derivation proceeding). Neither GHS nor Selner argued against the Board's findings with respect to these points during the remainder of the Board proceedings or on appeal. Consequently, it is undisputed that both Applications claim the Invention.

<u>The Board Proceedings and Decision</u>

Before the Board, the parties explained that Burnam and Selner met while Burnam was working for SteriWeb Medical, Inc. ("SteriWeb"), a company Burnam co-founded with Bertram Rosenthal. At that time, Selner, a doctor of podiatric medicine with a background in chemistry, was working for R&S Research, LLC ("R&S"), a company Selner separately co-founded with the same Mr. Rosenthal. SteriWeb and R&S shared office space and collaborated on commercial projects.

In 2013, Burnam, Selner, and Rosenthal determined that SteriWeb should make and sell a PHMB-petrolatum jelly. While developing that product, they decided to create a novel emulsifier-free PHMB-petrolatum jelly. In furtherance of this goal, Burnam contacted a third-party contract manufacturer, Pro-Tech Design & Manufacturing, Inc. ("Pro-Tech"), and thereafter served as the point-of-contact between Pro-Tech, on the one hand, and Selner and Rosenthal, on the other. Later, Burnam separated from SteriWeb and formed GHS.

The early attempts to create an emulsifier-free PHMB-petrolatum jelly focused on "heavy, heavy mixing," which ultimately proved unsuccessful. Appx81. During this time, someone – and the dispute presented to the Board

largely related to identifying who this person was – conceived of an inventive process involving heating the petrolatum and PHMB separately to different temperatures *before* mixing them together.

As one would expect in a derivation proceeding, the parties offer competing narratives of inventorship. According to GHS, Burnam conceived of the process of heating the petrolatum and PHMB to different temperatures before mixing, and then told Selner about his insight. By contrast, Selner says he discovered and disclosed to Burnam that the critical step for achieving a stable ointment without an emulsifier is heating the petrolatum to a point at which it retains its "wax properties" and has a "loose gel consistency," before mixing it with the separately-heated PHMB. Open. Br. at 6; Appx2598-99.

After reviewing the entire record and hearing oral argument, the Board found that GHS proved Burnam, conceived the Invention and communicated it to Selner via email by 4:04 p.m. on February 14, 2014. Appx26-27, 51. But the Board also found that Selner proved he conceived of the Invention earlier that same day, by 12:55 p.m., a finding based in part on another email exchanged between Selner and Burnam. Appx52. After finding Selner proved earlier conception, the Board determined that he could not have derived the Invention from Burnam and, thus, GHS failed to prove its derivation claim. Appx51-52.

In reaching these conclusions, the Board found that Selner presented sufficient evidence corroborating his inventorship. This evidence consisted principally of a declaration from a law clerk to Selner's attorney, who testified that she accessed Selner's web-based email account hosted by AOL, Inc. ("AOL") and, without modification, exported the emails that were later introduced into evidence. The Board also rejected GHS' argument that, given the nature of the Invention, actual

reduction to practice was needed in order to complete conception.

GHS timely appealed. The Board had jurisdiction under 35 U.S.C. § 6(b)(3) and we have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## LEGAL STANDARDS

We review the Board's legal determinations de novo and its underlying factual determinations for substantial evidence. *See Brown v. Barbacid*, 276 F.3d 1327, 1332 (Fed. Cir. 2002). While the ultimate question of whether a patent applicant derived a claimed invention from another inventor is one of fact, the determination of whether the accused deriver conceived is a question of law, which is based upon subsidiary factual findings. *See Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993).

We review the Board's evidentiary rulings for abuse of discretion. *See Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 775 (Fed. Cir. 2018). The Board abuses its discretion when it makes "a clear error of judgment in weighing the relevant factors" or bases its decision "on an error of law or clearly erroneous fact finding." *ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1277 (Fed. Cir. 2018).

"We have previously made clear that the harmless error rule applies to appeals from the Board just as it does in cases originating from district courts. Thus, to prevail the appellant must not only show the existence of error, but also show that the error was in fact harmful because it affected the decision below." *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004) (internal citations omitted); *see also* 28 U.S.C. § 2111 ("On the hearing of any appeal . . . the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.").

## DISCUSSION

We begin our analysis by setting out some of the similarities, but also important differences, between derivation claims as they were litigated prior to enactment of the AIA and derivation proceedings under the AIA. There seems to have been some confusion on these points during the Board proceedings.

Then we turn to the specifics of the derivation proceeding we are reviewing. As we explain, any error committed by the Board in its approach to GHS' claim of derivation or to Selner's affirmative defense was harmless. Each of the specific grounds GHS raises for reversal – lack of independent corroboration for Selner's invention story, improperly requiring GHS to disprove Selner's alleged conception, and failure to apply the doctrine of simultaneous conception and reduction to practice – lacks merit. Finally, we address GHS' alternative request that Burnam be named a co-inventor on Selner's '111 Application, which GHS failed to preserve.

I

### AIA Derivation Proceedings Resemble, But Are Meaningfully Different From, Pre-AIA Proceedings Involving Derivation Claims

Our existing case law involving derivation claims often presents these claims in the context of an interference (a type of proceeding that is not applicable to AIA patents), which is used to determine who is entitled to priority of invention under our prior first-to-invent law. *See* 35 U.S.C. § 135(a) (pre-AIA). An interference "focuses on [determining] which party *first* invented the subject matter." *Price*, 988 F.2d at 1190.

"To prove derivation in an interference proceeding, the party asserting derivation must establish prior conception of the claimed subject matter and communication of the

conception to the adverse claimant." *Cooper v. Goldfarb*, 154 F.3d 1321, 1332 (Fed. Cir. 1998).

When the AIA moved the United States from a first-to-invent to a first-to-file system, Congress eliminated interferences for patents and applications governed by AIA standards. *See SNIPR Techs.*, 72 F.4th at 1374-76. Thus, when AIA law governs, a first-inventor second-filer must prove the first-filer derived his purported invention from her. *See id.* at 1376 ("Where interference proceedings determined who was the first inventor, derivation proceedings determine whether an earlier filer had derived the claimed invention from a later filer.") (*comparing* 35 U.S.C. §§ 102(g) & 135 (pre-AIA) *with* 35 U.S.C. §§ 135 & 291 (AIA)).

The AIA transformed 35 U.S.C. § 135 from a law governing interferences (35 U.S.C. § 135 (pre-AIA)) to one governing derivation proceedings. Section 135 now provides, in part, that the Board:

> shall determine whether an inventor named in the earlier application derived the claimed invention from an inventor named in the petitioner's application and, without authorization, the earlier application claiming such invention was filed.

35 U.S.C. § 135(b); *see also* 35 U.S.C. § 291 (providing that derivation claims may also be filed by patent owner against another patent owner via civil action in district court).

Congress did not, however, describe with any specificity what a petitioner in an AIA derivation proceeding must prove to show that "an inventor named in the earlier application derived the claimed invention from an inventor named in the petitioner's application."

35 U.S.C. § 135(b).[2]  As "Congress is presumed to be aware of an administrative or judicial interpretation of a statute," *Lorillard v. Pons*, 434 U.S. 575, 580 (1978), we conclude that the required elements of a derivation claim have not changed *other than* to the extent necessary to reflect the transition from a first-to-invent to a first-to-file system of patent administration.

Proving derivation in a pre-AIA interference required the party asserting derivation to demonstrate (i) conception of the claimed subject matter prior to the adverse claimant's conception, and (ii) communication of the conception to the adverse claimant.  *See Cooper*, 154 F.3d at 1332.  Likewise, in an AIA derivation proceeding, proving derivation requires a two-part showing, involving conception and communication.  Under the AIA, however, because we no longer focus on who is the first-to-invent, the inquiry in an AIA derivation proceeding centers on whether the petitioner conceived and communicated the invention before the respondent filed his application.

Accordingly, to meet its prima facie burden in an AIA derivation proceeding, the petitioner must produce evidence sufficient to show (i) conception of the claimed invention, and (ii) communication of the conceived invention to the respondent prior to respondent's filing of that patent application.[3]  A respondent can overcome the

---

[2] Sometimes, as in this case, the petitioner is different than the petitioner's inventor.  Here, the petitioner is GHS, an entity, while petitioner's inventor is Burnam.  For simplicity, throughout this opinion we may refer to "petitioner" when we mean "petitioner's inventor," as is clear from the context.

[3] This case does not require us to decide whether a party's burden of proof in an AIA derivation proceeding is preponderance of the evidence or clear and convincing

petitioner's showing by proving independent conception prior to having received the relevant communication from the petitioner.

In general, under the AIA, unlike before, the inventor who files first will retain patent rights as long as he did not derive his claimed invention from another. For this reason, while our derivation cases arising in the context of pre-AIA interferences may provide helpful guidance, they must be carefully considered before being applied in AIA derivation proceedings. Judges must take care not to allow interference proceedings to be inadvertently revived through AIA derivation proceedings.

## II

### The Board's Focus On Earliest Conception Was Harmless Error

Neither the parties nor the Board appears to have appreciated the difference in the derivation standard governing AIA derivation proceedings as compared to pre-AIA interferences. Although the Board erred in focusing on whether Burnam or Selner was the first-to-invent, *see* Appx6 ("The party asserting derivation must establish prior conception of an invention . . . ."), this error was harmless.

As we have explained, the concentration on first-to-invent, while a hallmark of pre-AIA interferences with

---

evidence. In an interference, a party trying to prove derivation had to do so by clear and convincing evidence. *See Price*, 988 F.2d at 1190-94. Nevertheless, here both parties urged the Board to apply a preponderance of the evidence standard, and the Board did so, to both petitioner's affirmative case and respondent's affirmative defense. Appx5. Neither party has asked us to review this issue on appeal.

derivation claims, is no longer dispositive in an AIA derivation proceeding. To prevail in the latter, a first-to-file respondent like Selner need only prove that his conception was *independent*. Selner chose to prove his independent conception by proving that he conceived before Burnam. In doing so, Selner also overcame GHS's prima facie showing. Thus, while it was error for the Board to predicate its conclusions on Selner being the first-to-conceive, this error does not affect the Board's decision: in finding Selner was the *first*-to-invent, the Board also indirectly determined that he *independently* conceived and, thus, did not derive his invention from Burnam. Accordingly, the Board's erroneous focus on who was first-to-invent amounts to no more than harmless error.

We now turn to GHS' arguments on appeal.

## III

### GHS' Arguments For Reversal Lack Merit

GHS seeks reversal of the Board's judgment in favor of Selner on several grounds. First, GHS argues that the Board erred by not requiring Selner to corroborate his claim of inventorship with evidence independent of himself. Second, GHS contends that the Board improperly shifted the burden to GHS to disprove Selner's purported conception, rather than making Selner prove his own conception. Third, and finally, GHS asserts that the Board should have applied the doctrine of simultaneous conception and reduction to practice. We are not persuaded by these arguments.

## A

### The Board's Findings Are Supported By Adequately Corroborated Evidence

The Board did not err in finding that Selner proved independent conception with evidence that adequately corroborated his testimony.

As the Board recognized, Appx6, the rule of reason test is used to determine whether an alleged inventor's testimony is sufficiently corroborated. *See Blue Gentian, LLC v. Tristar Prods., Inc.*, 70 F.4th 1351, 1357 (Fed. Cir. 2023) ("[A] 'rule of reason' test is applied where 'all pertinent evidence is examined in order to determine whether the inventor's story is credible.'") (quoting *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001)). In undertaking such an analysis, the Board must consider "all pertinent evidence" and then determine whether the "inventor's story" is credible. *Sandt*, 264 F.3d at 1350.

Corroboration of inventor testimony is required because an alleged inventor "might be tempted to describe his actions in an unjustifiably self-serving manner in order to obtain a patent." *Shu-Hui Chen v. Bouchard*, 347 F.3d 1299, 1309 (Fed. Cir. 2003); *see also Price*, 988 F.2d at 1195 (noting that even "honest witnesses can convince themselves that they conceived the invention of a valuable patent"). "Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated." *Sandt*, 264 F.3d at 1350-51; *see also id.* at 1350 ("Although each case must be decided in view of its own facts, the determination is not utterly unstructured.").

The Board proceeded in a manner consistent with our precedents. After noting GHS was not challenging the authenticity of the evidence presented by Selner, Appx33 n.14,[4] the Board determined that the emails (retrieved by Selner's attorney's law clerk from Selner's web-based AOL email account) were documentary evidence generated contemporaneously with the inventive process and, as

---

[4] GHS did not move to exclude Selner's February 14 emails. Nor does GHS dispute the authenticity of the emails on appeal.

such, placed substantial weight on them in finding that Selner's invention story was adequately corroborated, *see, e.g.*, Appx32-34 (crediting Selner's evidence that he sent, and Burnam received, the February 14 emails, based on the messages themselves, their timestamps, Selner's attorney's law clerk's retrieval of them, and that "AOL is a well-known email service provider who stores all the emails of its account holders that are sent or received using an AOL email address").

The Board continued its analysis, finding "other circumstantial evidence . . . reinforces the testimony of [Selner's counsel's law clerk] and makes the case of corroboration even stronger, although such additional evidence is unnecessary." Appx34. For example, the Board found that the language in Burnam's email to Selner at 4:04 p.m. on February 14 "bears substantial resemblance to the language used by Marc Selner" in his email to Burnam hours earlier, which in the Board's view was "circumstantial evidence that Marc Selner did send [the 12:55 p.m. email] . . . to Bradley Burnam." Appx35. All of this, in the Board's view, further supported the reasonable inference that Burnam received and copied what Selner had previously disclosed to him. *See id.* Additionally, the Board noted that a few months later, on April 24, 2014, Burnam sent an email to Selner's daughter in which Burnam himself referred to the Invention (which he described as "magic goo") as having been "invented" by Selner. Appx35-37; *see also* Appx2698.

We find GHS' assertions that the Board committed legal error in its application of the independent corroboration requirement unavailing. Contrary to GHS' insistence, the Board did not "generally disregard[]" GHS' evidence. Open. Br. at 22. Instead, the Board considered the entire record and made findings of fact, all of which are supported by substantial evidence. *See* Appx15-52. GHS faults the Board for relying on the emails because their evidentiary value "is solely based on communications from"

Selner, Open. Br. at 37, but the Board did not err by placing substantial weight on the emails as corroborating evidence. The emails, whose authenticity is not challenged, do not require independent corroboration. *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577-78 (Fed. Cir. 1996) ("This court does not require corroboration where a party seeks to prove conception through the use of physical exhibits. The trier of fact can conclude for itself what documents show, aided by testimony as to what the exhibit would mean to one skilled in the art.") (internal citation omitted); *see also Brown*, 276 F.3d at 1335 (same).  In any event, the metadata generated by the web-based mail server – including the date and time the messages were sent and received, as well as the addresses of the sender and recipient – was not authored by Selner.  That metadata is independent of Selner's own statements and documents.[5]

In sum, the Board did not err in its application of the law and did not abuse its discretion in its evidentiary rulings.  It had substantial evidence for each of its findings of fact.  GHS has demonstrated no reversible error.

B

The Board Held Each Party To Its Burden of Proof

GHS next contends that the Board improperly shifted the burden to GHS to disprove Selner's alleged conception. Again, we disagree.

GHS' insistence that the Board merely found that Selner *possessed* the Invention, without requiring Selner also prove that he conceived of it, rests on an unfair and

---

[5] This distinguishes this case from *Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293, 1296 (Fed. Cir. 2018), in which a party failed to produce "any evidence of . . . conception that is not supported *solely* by [the inventor] himself" (emphasis added).

incorrect reading of the Board's decision. The Board carefully considered the evidence before it and the parties' arguments and, after pages of analysis, found that Selner proved conception. The Board did not find only that Selner proved possession, as opposed to a complete conception of the Invention. And at no point did the Board require GHS to prove that Selner did not conceive the Invention.

In short, the Board properly held each party to its burden of proof. GHS identifies no reversible error.

## C

### Selner Did Not Have To Show Reduction To Practice To Prove Conception

Finally, GHS accuses the Board of failing "to adjudicate a threshold and outcome determinative issue," namely "whether the subject stable suspension composition and method of manufacturing it fall into the category of inventions that require simultaneous conception and reduction to practice" in order for conception to be complete. Open. Br. at 47. In GHS' telling, "the Board recognized that GHS raised the issue that reduction to practice was necessary for conception" but "failed to consider this argument" in its analysis. *Id.* (citing Appx44). GHS is wrong. The Board neither ignored GHS' argument, nor erred in rejecting it.

The Board addressed GHS' argument that "reduction to practice is a requisite for complete conception" of the Invention over the course of three pages of its decision. Appx44-46. As the Board recognized, generally conception can occur without an inventor actually reducing the invention to practice. Appx46; *see also, e.g., Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55, 60 (1998). There are exceptions, including where "an inventor is unable to envision the detailed [structure of his invention] so as to distinguish it from other materials, as well as a method for obtaining it." *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1206

(Fed. Cir. 1991). Contrary to GHS' suggestion, however, we have not held that actual reduction to practice is always necessary for complete conception to occur in unpredictable fields of invention. In fact, we have rejected this contention. *See Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1229 (Fed. Cir. 1994).

GHS cites no authority, and provides no persuasive reason, for requiring Selner to have reduced the Invention to practice in order to have fully conceived of it. To the contrary, Selner's conception was complete at the point at which he was "able to define [the Invention] by its method of preparation" or when he had formed "a definite and permanent idea of the complete and operative invention." *Amgen,* 927 F.2d at 1206. Substantial evidence supports the Board's factual finding that Selner had reached these points by 12:55 p.m. on February 14, 2014 – notwithstanding the fact that he never actually reduced the Invention to practice – as illustrated by the fact that Selner explained the Invention in detail to Burnam in his February 14 email sent at 12:55 p.m.

Actual reduction to practice was not required for complete conception of the Invention. The Board did not commit reversible error.

IV

### GHS Failed To Preserve Its Alternative Request That Selner Be Named A Joint Inventor

In the alternative, GHS argues that, if we affirm the Board's finding that Selner proved independent conception, we should remand for the Board to determine whether Burnam should be named as a co-inventor on Selner's '111 Application. We will not do so. GHS' request to correct inventorship was not properly presented to the Board and is forfeited.

Under the Board's rules of practice, a contested request for correction of inventorship in a patent application must

be made in a separate motion under 37 C.F.R. § 42.22, accompanied by the processing fee as well as an application data sheet identifying each inventor. *See* 37 C.F.R. § 1.48(i) (citing 37 C.F.R. §§ 1.48(a), 42.22). Section 42.22(a) further requires such a motion to include a "statement of the precise relief requested" and a "full statement of the reasons for the relief requested, including a detailed explanation of the significance of the evidence including material facts, and the governing law, rules, and precedent." 37 C.F.R. § 42.22(a).

GHS failed to comply with these requirements. It never filed a separate motion. Instead, the only manner by which it put its request before the Board was via a single sentence in its Petition:

> In addition, or in the alternative, [GHS] seeks a finding under 35 U.S.C. § 135(a)(1) that Burnam is joint inventor of at least one claim in the '111 Application and an order naming him as an inventor on the '629 and '111 Applications.

Appx343. This is not the required separate motion. Nor is it a detailed explanation of the reasoning supporting joint inventorship.

Moreover, subsequent to including this one conclusory sentence in its Petition, GHS made no reference whatsoever to its request for correction of inventorship. GHS did not attempt to prove or even argue, in its briefing or at the oral hearing, that Burnam is a co-inventor.

Under these circumstances, any error the Board may have committed in not expressly addressing an undeveloped request for alternative relief, buried in a petition and never referenced again, is attributable to GHS' own failings and is harmless. *See generally In re Steed*, 802 F.3d 1311, 1321 (Fed. Cir. 2015) (holding that Board's

failure to rule on a motion that "did not conform to Board regulations" did not amount to "reversible error").[6]

## CONCLUSION

We have considered GHS' remaining arguments and find they lack merit. Accordingly, we affirm the Board's judgment for Selner.

## **AFFIRMED**

## COSTS

Each party shall bear its own costs.[7]

---

[6] We recognize that the Board did consider, and deny, Selner's similar request that he be named as sole inventor on GHS' '197 Application. Appx54; *see also* Appx516. This was despite the fact that Selner also failed to file a separate motion or explain in detail his reasoning for his requested relief. Any error in the Board's treatment of Selner's request is also harmless as it, too, has no impact on the disposition of this appeal.

[7] We reject Selner's characterization of this case as a "brazen, meritless appeal" warranting sanctions. Resp. Br. at 42.